IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

```
SEAN NICHOLS                       *
                                   *
         Plaintiff                 *
                                   *
VS.                                *
                                   *       NO: 4:11CV00823 SWW
UNICARE LIFE & HEALTH              *
INSURANCE COMPANY and              *
ACXIOM CORPORATION LIFE &          *
ACCIDENTAL DEATH AND               *
DISMEMBERMENT INSURANCE            *
PLAN                               *
         Defendants                *
                                   *
```

**ORDER**

Plaintiff Sean Nichols ("Nichols") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., against UniCare Life & Health Insurance Company ("UniCare") and Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan, challenging UniCare's decision to deny Nichols's claim for accidental death benefits. Before the Court is Nichols's motion for summary judgment (docket entries #13, #14, #15), Defendants' responses in opposition (docket entries #19, #20), Nichols's reply (docket entry #23), and Defendants' sur-reply (docket entry #26). After careful consideration of the parties' filings and the stipulated administrative record ("AR"), and for reasons that follow, the Court finds that the denial of accidental death benefits was erroneous and that Nichols is entitled to judgment in his favor.

**I. Background**

The following facts are undisputed. Nichols is the surviving spouse of Dana Nichols

("Dana"), who died on May 3, 2010.  Dana was employed by Acxiom Corporation, and she was insured under the Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan (the "Plan"), which qualifies as an employee benefit plan governed by ERISA. The Plan is funded by a policy underwritten by UniCare, and UniCare serves as claims administrator.

Dana's autopsy report lists her cause of death as "mixed drug intoxication" and states the manner of death as undetermined.  [AR UniCare 00076]  The opinion portion of the autopsy report reads as follows:

> This 42-year old white female, Dana Nichols, died of mixed drug intoxication. Investigation of the circumstances of death revealed that the decedent was found face down in bed at her residence.  She was transported to Baptist Emergency Room where she was pronounced dead.  Reportedly, a bottle of hydrocodone was found at the scene with twelve pills missing.  No other information was available at the time of examination.
>
> The decent had an obese body habitus.  Internal examination demonstrated no evidence of trauma.  There was diffuse visceral congestion.  Microscopic examination detected a fatty liver.  No other lesions were present.  Toxicology detected multiple drugs in the blood to include citalopram/escitalopram, hydrocodone, oxycodone and loratadine.  The atropine detected is the result of terminal medical attention.  No alcohol was detected.

[AR UniCare 00082]  A supplemental report issued by the Arkansas Department of Health lists the cause of death as "mixed drug intoxication" and states that manner of death "could not be determined." [AR UniCare 00036]

Nichols filed a claim for accidental death benefits under the Plan, and provided UniCare a copy of Dana's death certificate.  By letter dated February 9, 2011, UniCare denied Nichols's claim, stating:

> We had requested additional information from Mr. Nichols to determine if there was any new information that would clarify the 'could not be determined' manner of

death that was on the death certificate.  In the absence of any new information, we have no choice but to deny the claim.

According to the contract, . . . "we will pay a benefit if your death occurs under these conditions . . . . "

1.  The death is a result of your accidental injury . . . . "

According to the death certificate, the cause of death was "could not be determined."

[AR UniCare 0004]

Nichols appealed the adverse decision and submitted additional items in support of his claim.  Among the materials submitted were letters from Dana's parents, Vikki and Bill Reynolds.  Mrs. Reynolds provided the following time line regarding Dana's health:

>     1989 - Became overweight
>     2004 - Rear ended in car accident, beginning of back pain
>     2005 - Diagnosed with type-2 diabetes, began medication
>     2006 - Broadsided in car accident continuing back pain
>     2006 - Diagnosed with thyroid cancer, had surgery–removed entire thyroid and thirteen
>             lymph nodes–began medication
>     2007 - given radioactive iodine to kill off any remaining thyroid particles in body
>     2008 - started taking sleep medication
>     2010 - car accident continuing back pain and taking pain medicine
>     2010 - May 19th - scheduled for lap [band] surgery to lose weight

In her letter, Mrs. Reynolds stated that Dana was happily married, with a son who had just graduated from college and a married daughter.  Mrs. Reynolds reported that Dana had purchased a new car one month before her death, and she was looking forward to bariatric (lap band) surgery.  Regarding medication, Mrs. Reynolds wrote:

> I was worried about all the medicines she was taking.  She told me not to worry that she had decided to have lap [band] surgery to lose weight and help her get off her diabetes and pain medicine for her back.  She even thought if she got rid of the back pain, she could get off the sleep medicine.  Taking thyroid medicine would be for the rest of her life but getting off depression, sleep, pain and diabetes medicine was her goal.  She was looking forward to her future.  I miss Dana terribly.

[AR UniCare 00073]

In his letter, Mr. Reynolds repeated his wife's account of Dana's medical history. He also reported the following:

> When Dana was living with us in Hot Springs, there were several occasions when her Mother or I would observe her getting up in the middle of the night and go into the kitchen or den. She would eat or drink and never remember the occasion in the morning even though in one case, she had a conversation with her Mother. In a later conversation with Sean, he said this continued after they moved to Little Rock and that it sometimes happened two or three times in a night. We felt it was related to the Ambien she took and encouraged her to stop taking but she never did. I believe Dana had a growing dependency on the pain medications and this mixed with Centroid and Ambien was more and more controlling her life. Dana was no quitter.

[UniCare 00075]

Nichols also provided medical records and copies of medical insurance documents, which contain the following information:

- An insurance record documenting Dana's prescription claims during the last twelve months of her life show the following prescriptions and fill dates:

  ▸ Endocet (a combination of acetaminophen and oxycodone) 30-day prescription last filled on April 27, 2010
  ▸ zolpidem (Ambien) 30-day prescription last filled on April 3, 2010
  ▸ levothyroxine, 30-day prescription last filled on April 3, 2010
  ▸ apap/codeine (acetaminophen and codeine) 2-day prescription last filled on December 29, 2009
  ▸ diazepam (Valium) 2-day prescription last filled on December 29, 2009
  ▸ sertraline (an antidepressant), 30-day prescription last filled on October 12, 2009. [AR UniCare 00083][1]

---

[1] The list of prescription drugs provided by Nichols did not necessarily include all drugs that were prescribed for Dana. Copies of email messages among UniCare employees indicate that UniCare inquired whether the insurance company covering Dana's medical benefits would provide Dana's medical records. [AR UniCare 00285-00287] An email message dated May 25, 2011 from the medical insurer's compliance analyst states:

> We probably could look at the medical records accessible through our system but there is no guarantee that all information would be there. Another thing we consider

- A letter by Dr. John W. Baker dated January 7, 2010, recommending lap band surgery for Dana. Dr. Baker's letter states that in addition to being 75 pounds overweight, Dana suffered from back pain, degenerative disc disease, depression, diabetes type II, elevated cholesterol, frequent headaches, hypothyroidism, irregular or painful menses, pain in weight bearing joints, and skin conditions. [AR UniCare 43-44]

- Explanation of insurance benefits forms show that Dana's insurance provided benefits for the following:

    ▸ Physical therapy on January 28, 2010; February 2 and 16, 2010; March 5 and 22, 2010; and April 12, 15, 19, 22, and 26, 2010
    ▸ Doctor's office visits October 7, 2009; November 24, 2009; December 1 and 18, 2009; January 8, 10, 13, and 25, 2010; February 5, 2010; March 4, 2010; and April 7, 27, 2010
    ▸ Emergency room visit and related charges on February 26, 2010

By letter dated September 2, 2011, UniCare denied Nichols's appeal, stating that the information submitted did not support a claim for accidental death benefits. The decision on appeal states two reasons for UniCare's adverse decision: (1) the manner of death was listed on the death certificate as "could not be determined," and (2) the Plan excludes benefits for death caused by intoxication. [AR UniCare 0003]

## II. Standard of Review

ERISA provides that an employee may bring a civil action to recover benefits due to him under the terms of an employee welfare benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B). Although Congress has not specified the scope of judicial review applicable to ERISA claims, in *Firestone*

---

is that when we request needed information, the claimant can assure that all of the information . . is provided to us. In the case of this claim, the insured (deceased) could have possibly gotten prescriptions filled and they not be reflected in our system records because she may not have filed them as a medical claim. Requesting the information from the claimant (beneficiary) who has a stake in getting the claim resolved gives a better assurance that we receive complete information.

[AR UniCare 000285]

*Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948 (1989), the Supreme Court held that a denial of benefits challenged under ERISA is subject to *de novo* review unless the terms of the benefit plan give the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948, 956 (1989). When a plan confers such discretionary authority, the administrator or fiduciary's decision is given deference and reviewed under an abuse of discretion standard, unless factors exist that mandate application of a less deferential standard. *See Woo v. Deluxe Corp.*, 144 F.3d 1157, 1060-61 (8th Cir. 1998).

Defendants assert that the Plan gives UniCare complete discretion to determine eligibility for benefits because it requires satisfactory written proof of the loss and provides that such proof must be satisfactory to the administrator. Under the heading "Timely Payment of Claims," the Plan provides: "Any benefits due under this plan shall be due once we have received proper, written proof of loss, together with such reasonably necessary information we may require to *determine our obligation*." [AR UniCare 000317(emphasis added)]

Defendants argue that the foregoing provision gives the plan administrator discretionary authority. The Court disagrees. The language gives UniCare authority to require reasonably necessary information to determine its obligation, but it fails to provide a clear signal that UniCare has full discretion and authority to determine eligibility for benefits. *See Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 629 (8th Cir. 2007)(noting that policy language stating that benefits would be paid when "we determine that your proof is satisfactory" was ambiguous and did not confer discretion on plan administrator).

In sum, the Court finds that the claims provision requiring necessary information and a

determination before benefits are due fails to confer discretionary power upon UniCare. *See Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001)(quoting *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000)("[A] policy claim provision stating that 'the plan administrator will not pay benefits until he receives satisfactory proof of entitlement . . states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer.").

### III. Analysis

The Court begins with UniCare's determination that the proof of loss submitted by Nichols did not support his claim for accidental death benefits. In its letter denying Nichols's appeal, UniCare stated: "The manner of death is listed on the death certificate as 'could not be determined'; therefore an accidental death was not determined by the medical examiner." [AR UniCare 0003]. UniCare's stated reason for denying Nichols's claim was unjustified. A medical examiner's inability to determine the manner of death--whether death resulted from natural causes, accident, suicide, or homicide--is simply not determinative of whether Dana Nichols death resulted from "accidental injury" within the meaning of the Plan. *See Schmidt v. Metropolitan Life Ins. Co.*, No. 08-0726-CV-W-FJG, 2009 WL 2982918, *6 (W.D. Mo. Sept. 14, 2009).

The Plan states that accidental death benefits will be paid "if your death occurs under these conditions: 1) the death is a result of your accidental *injury;* and  2) the *injury* occurred while you were insured by this coverage; and 3) the death occurred within 180 days of injury." [AR UniCare 000361 (emphasis in original)]   The Plan states: "This accidental death benefit

will be paid when we receive due written proof[2] that your death occurred under the conditions stated in this section." [AR UniCare 000361]  The Plan does not define the terms "accident" or "accidental," but it defines the term "injury" as "physical harm to the body of an insured person. [AR UniCare 000372]

UniCare asserts that the Court should apply *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir.1990) as the standard for determining whether Dana's death was the result of an accidental injury.  Under *Wickman*, where evidence of the insured's subjective expectations is lacking, the factfinder must engage in an objective analysis of the insured's expectations, asking "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."  *Wickman*, 908 F.2d at 1088 (citing *City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052, 1058–59 & n. 4 (8th Cir. 1979)).

Ostensibly applying the *Wickman* standard, UniCare contends that Dana's consumption of numerous medications was "an intentional act for which she would have subjectively expected death to be a highly likely outcome."  Docket entry #19, at 10.  UniCare states that Dana had been consuming prescription medications for at least a year, and Nichols failed to "offer any explanation as to why the combination would have been lethal on the date of her death, but not in the weeks and months prior thereto."  *Id*. at 11.  According to UniCare, a "reasonable interpretation of the evidence before UniCare . . . was that Ms. Nichols, having established

---

[2]The Eighth Circuit has held that phrases such as  "due proof of loss" "'read like a typical insurance policy' and 'do not trigger the deferential ERISA standard of review.'"  *Brown v. Seitz Foods, Inc., Disability Ben. Plan,* 140 F.3d 1198, 1200 (8th Cir. 1998)(quoting *Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust*, 85 F.3d 398, 402 n. 2 (8th Cir. 1996)).

tolerance to the medications she had been consuming in combination for years, took more than the prescribed dosages on the date of her death." Docket entry #19, at 11.

UniCare also points to the following statement in the autopsy report: "Reportedly, a bottle of hyrocodone was found at the scene with twelve pills missing." [AR UniCare 00082] UniCare argues: "This fact is significant because Plaintiff admits that on the date of Ms. Nichols's death, she had been prescribed several medications. Given the fact that Ms. Nichols very likely had just filled several prescriptions, the absence of 12 pills from a bottle of hyrocodone supports the conclusion that Ms. Nichols had intentionally consumed medication in non-prescribed dosages over a very short period of time . . . ." Docket entry #19, at 10.

UniCare adds, "Plaintiff failed to provide UniCare any evidence that would refute the medical determination that Ms. Nichols's death was not accidental, and has failed to meet his burden of showing entitlement to accidental death benefits." *Id*.

UniCare's decision on appeal provides no indication that UniCare attempted to ascertain Dana Nichols's subjective expectations or whether a reasonable person in her position would have viewed her death as highly likely to occur. Furthermore, UniCare proposes facts that are not support by the administrative record. Prescription records provided by Dana's medical insurer show that she filled prescriptions on April 27, 2010, six days before her death. The Court has searched the record and finds no evidence that the decedent filled a prescription for hyrocodone on May 3, 2010, the date of her death, that she consumed medication in non-prescribed doses over a very short period of time, or that she had developed a tolerance to her prescribed medication. Most important, there is absolutely no evidence of a "medical determination" that Dana's death was not accidental.

The administrative record demonstrates that Dana took prescribed medication for the treatment of several medical conditions, including back pain, degenerative disc disease, depression, insomnia, diabetes type II, and hypothyroidism.  The only drug listed in the autopsy toxicology report that does not appear on the list of prescriptions provided by Dana's medical insurer is hyrocodone.  However, Dana further injured her back in an automobile accident that occurred approximately one and one-half months before her death, which increased her back pain, and the record reflects that the insurer's list of medications would not include prescriptions filled without a corresponding insurance claim.   The record is simply void of evidence that Dana took the prescribed medications in an amount or manner that was contrary to a physician's instructions.  In sum, all of the evidence indicates that Dana's death was the unexpected result of ingesting prescribed medications.

As an alternative basis for denying Nichols's claim, UniCare asserts no benefits are payable because  Dana's death was "caused by her intoxication."  Docket entry #19, at 17.  The Plan provides:

> No benefit will be paid by this coverage for a death or loss that results from, or is caused directly, wholly, or partly by:
>
> \* \* \* \* \*
>
> 9.  Being intoxicated.  Conviction is not necessary for determination of being intoxicated.
>
> "Intoxicated" means being legally intoxicated as determined by the laws of the jurisdiction where the accident occurred."

[AR UniCare 000311].

Arkansas statutes define the term "intoxicated" in connection with criminal offenses for driving while intoxicated and public intoxication.  Arkansas Code § 5-65-102 defines

10

"intoxicated" as being influenced or affected by any intoxicant "to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians." Ark. Code Ann. § 5-65-102(s).  And Arkansas Code § 5-71-212(a) provides that a person commits the offense of public intoxication if he or she "appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under such circumstances that . . . the person is likely to endanger himself . . . or another person or property . . . . " Ark. Code Ann. § 5-71-212(a).

When reviewing an ERISA plan de novo, a court must interpret the terms of the plan by "'giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean.'" *Adams v. Continental Cas. Co.*  364 F.3d 952, 954 (8th Cir. 2004)(quoting *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 789–790 (8th Cir. 2002)). Because the Plan defines "intoxicated" as "legally intoxicated as determined by the laws of the jurisdiction where the accident occurred[,]" the Court finds that a reasonable person in the position of a plan participant would understand that the Plan's exclusion for intoxication is intended to apply to death caused by committing acts, such as driving, while intoxicated, not to situations where the immediate cause of death is ingestion of a lethal mixture of prescription drugs. *See Sheehan v. Guardian Life Insurance Co.*, 372 F.3d 962, 967 (8th Cir. 2004)(finding that exclusion for loss resulting from being under the influence of a controlled substance was "intended to apply to death caused by, for example, driving while intoxicated, not to the accidental ingestion of a controlled substance"). The evidence shows that mixed drug intoxication was the immediate cause of Dana's death, and there

is no evidence that she was legally intoxicated when she ingested the lethal drug mixture. The Court finds that evidence contained in the administrative record does not bring Dana's death within the intoxication exclusion.

### IV. Conclusion

For the reasons stated, the Court finds that the decision denying accidental death benefits was erroneous and that Plaintiff is entitled to accidental death benefits under the Acxiom Corporation Life and Accidental Death and Dismemberment Insurance Plan. Plaintiff's motion for summary judgment (docket entry #13) is GRANTED, and judgment will be entered in Plaintiff's favor.

IT IS SO ORDERED THIS 14TH DAY OF SEPTEMBER, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE